### CASCADEN v. WEBER.

(Circuit Court of Appeals, Ninth Circuit. December 17, 1923.)

No. 4093.

1. **Mortgages** ⊂⇒318—**Under agreement to make loan to corporation, note and mortgage held paid, and not additional security.**

Where a director made a loan to the corporation to enable it to pay a purchase-money note executed by another director and secured by a mortgage on corporate property, and then paid the note and procured a release of the mortgage security, *held*, that the original note and mortgage were paid, and were not additional security to the note and mortgage given to the director.

2. **Bills and notes** ⊂⇒537(3)—**Evidence of want of consideration held sufficient to go to jury.**

In an action on a note, evidence of want of consideration for another note on which defendant counterclaimed, *held* sufficient to go to jury, and it was therefore error to direct verdict for defendant.

In Error to the District Court of the United States for the Territory of Alaska; Cecil H. Clegg, Judge.

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Action by Blanche Cascaden, as administratrix of the estate of David H. Cascaden, deceased, substituted plaintiff for David H. Cascaden, as guardian of the estate of David H. Cascaden, an insane person, against George Weber. Judgment for defendant, and plaintiff brings error. Reversed and remanded for new trial.

John A. Clark, of Fairbanks, Alaska, and Lyons & Orton, of Seattle, Wash., for plaintiff in error.

R. F. Roth, of Fairbanks, Alaska (Robert W. Jennings, of San Francisco, Cal., of counsel), for defendant in error.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge. It appears from the allegations of the complaint in this case that on the 31st day of October, 1917, the defendant Weber borrowed the sum of $3,000 from the Farmers' Bank of Fairbanks; that the plaintiff, Cascaden, and one Pettree, signed a promissory note given to the bank as joint makers with Weber for the amount so borrowed; that the money borrowed was for the sole use and benefit of Weber; that after maturity of the note the plaintiff paid the same, together with $30 accrued interest; and that the defendant has not repaid the amount so paid to the plaintiff, or any part thereof. The proof does not sustain the allegations of the complaint in some respects. It appears from the testimony that on October 31, 1917, the defendant Weber and Pettree purchased the Tanana Bottling Works for the sum of $9,000 from one Ahlberg; that $3,000 of the purchase price was paid in cash; that $3,000 was paid from the money borrowed from the bank; and that the balance of $3,000 is still due the seller, evidenced by a promissory note signed by the purchasers. It further appears that the original note was not signed by the plaintiff, but that he affixed his name thereto at maturity, and in consideration therefor the bank extended the time of payment for a period of 60 days, or until June 30, 1918. One of the defenses to this note was that it was paid in full on the 3d day of July, 1918, by the execution of a promissory note for $3,033 by the Fairbanks Beverage Company in favor of the plaintiff, secured by a mortgage on its property. The second cause of action is based upon a promissory note for the sum of $500, executed by the defendant and payable to the plaintiff. There is no controversy over this.

The defendant, by way of counterclaim, sets up by answer a promissory note executed by the plaintiff and Pettree in favor of the defendant, in the sum of $2,000. The reply of the plaintiff alleges, among other things, that the last-mentioned note was without consideration. Upon the issues presented by the pleadings and the testimony, the court, in effect, charged the jury to find a verdict in favor of the defendant as to the first cause of action, and directed a verdict in his favor on the counterclaim. The case has been brought here by writ of error, and the principal errors assigned are based upon the instructions given by the court and upon the refusal of the court to instruct as requested.

[1] We say that the court in effect instructed a verdict in favor of the defendant as to the first cause of action by reason of the following

facts: It appears from the testimony that the bottling works in question were taken over by the Fairbanks Beverage Company, a corporation, of which the plaintiff, Cascaden, the defendant, Weber, and Pettree were stockholders and directors. At a meeting of the directors held on the 25th day of June, 1918, the finances of the corporation were discussed, and from such discussion it appeared that the note for $3,000 and interest due the Farmers' Bank, secured by a mortgage on a portion of the property of the Beverage Company, had been due since April 30, 1918, and that in addition thereto the company stood in need of ready money to the extent of about $5,000 for the purpose of extending its business and liquidating its bills payable. The plaintiff thereupon expressed a willingness to loan to the corporation the amount of about $8,025, upon condition that the company execute to the plaintiff its promissory notes, secured by mortgage upon the assets of the corporation. The offer of the plaintiff was accepted, and thereupon a motion was put and carried unanimously that the president and secretary be authorized and directed to make, execute, and deliver to the plaintiff its promissory note or notes, aggregating the sum of $5,000, secured by a first mortgage upon all of the assets of the company; and in order to obtain such loan and give such security the president and secretary were further authorized and directed to make, execute, and deliver to the plaintiff an additional promissory note, secured by a second mortgage upon the assets of the company, for the purpose of paying and liquidating the note and mortgage of $3,000 and interest due to the Farmers' Bank. The minutes of the corporation containing the foregoing were signed by the plaintiff, the notes and mortgages were executed and delivered as directed, and the plaintiff thereupon paid the note to the bank and procured a release of the mortgage security.

Under these facts the plaintiff claimed that the note and mortgage of the corporation were additional security merely, and did not pay or discharge the original note. The defendant, on the other hand, claimed that the note was fully paid and discharged. The court instructed the jury that they would not be justified in finding from the testimony that the note and mortgage of the corporation were given as additional security to the other note, thus taking away the only support upon which the plaintiff relied. But it does not follow from this that the instruction was erroneous. On the contrary, we are clearly of opinion that the note to the bank was paid under the undisputed testimony, and that the jury might well have been so instructed. The plaintiff agreed to make a loan to the corporation to enable it to pay this and other obligations, his offer was accepted, the notes and mortgages were executed and delivered to that end, and the corporation thereby became the debtor of the plaintiff, and the plaintiff accepted and assented to the change. Had the money been paid to the corporation, and then over to the bank, there could be no question as to the effect of the transaction, and the mere fact that the note was paid by the plaintiff, instead of by the corporation, did not keep the note alive for his benefit or for any purpose. In other words, the plaintiff paid the note to the bank, not as accommodation maker, but because of the loan he had made, or agreed to make, to the corporation.

[2] The testimony as to the consideration for the note set up as a counterclaim in the answer is very indefinite and unsatisfactory. The defendant claimed that the note was given for a balance due from Pettree on that date, while the plaintiff claimed that the note was given merely to indemnify the defendant in the event that he was compelled to pay the $3,000 note to Ahlberg, which, as already stated, was signed by Pettree and the defendant, and that the defendant was not compelled to and did not pay the Ahlberg note. At the time of the trial the plaintiff was insane, Pettree was dead, or at least was not called as a witness, and the defendant alone had knowledge of the facts and circumstances surrounding the execution and delivery of the note. As already stated, his testimony was very unsatisfactory. The witness seemed to have little knowledge or recollection of the transaction, or for what the note was given. It is conceded that the plaintiff was not indebted to the defendant at the time of the execution of the note, and it is likewise conceded that there was no present consideration for the note. If the note was given for a past indebtedness, the record is silent as to when the indebtedness was incurred or how it was incurred, and the testimony of the defendant, weak in itself, was contradicted in a measure by contradictory statements made out of court and by admissions against interest. We are familiar with the rule that the burden of proof was upon the plaintiff to show a want or failure of consideration, but under all the circumstances we think that question should have been submitted to the jury, and that it was error to direct a verdict for the defendant.

The plaintiff, who was in an insane asylum at the time of the trial, has since died, and his personal representative has been substituted in his place; but we have referred to the parties throughout as designated in the record and in the court below.

The judgment of the court below is reversed, and the cause is remanded for a new trial as to the counterclaim set up in the answer.